DR

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,              :     <u>INDICTMENT</u>

              - v. -                   :

JAVED IQBAL,                           :     S1 06 Cr. 1054 (RMB)
     a/k/a "John Iqbal," and
SALEH ELAHWAL,                         :

              Defendants.              :

- - - - - - - - - - - - - - - - - - -x

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____            │
│ DATE FILED: JUN 2 0 2007         │
└─────────────────────────────────┘
```

<u>COUNT ONE</u>

The Grand Jury charges:

<u>*Background*</u>

1.   Hizballah ("Party of God") is an organization based in Lebanon whose stated mission is the establishment of a fundamentalist Islamic state and the destruction of the State of Israel.  Hizballah regards the United States as its enemy in this struggle.  Since its inception in or about 1982, Hizballah has pursued its mission through, among other things, attacks on civilian targets.

2.   At all times relevant to this Indictment, Hizballah has operated Al Manar (the "beacon"), a television station based in Lebanon that is designed to cultivate support for Hizballah's activities and mission.  Through its broadcasts on Al Manar,

Hizballah endeavors, among other things, to raise money for its activities and to recruit volunteers for future attacks.

3.    On or about October 8, 1997, Hizballah was designated by the Secretary of State as a Foreign Terrorist Organization, pursuant to Section 219 of the Immigration and Nationality Act, and has remained so designated through and including the present time.

4.    In addition, the Department of Treasury designated Hizballah as a Specially Designated Global Terrorist on or about October 31, 2001. The Department of Treasury separately designated Al Manar as a Specially Designated Global Terrorist on or about March 23, 2006.  Hizballah and Al Manar have each remained Specially Designated Global Terrorists at all times since their initial designations by the Department of Treasury.

5.    At all times relevant to this Indictment, JAVED IQBAL, a/k/a "John Iqbal," and SALEH ELAHWAL, the defendants, operated HDTV Limited, d/b/a "HDTV Corporation" (hereinafter, "HDTV"), a corporation registered in the State of New York that provided, among other things, satellite television services to customers in the New York City area. At all times relevant to this Indictment, HDTV maintained its main office in Brooklyn, New York, and maintained certain satellite equipment at IQBAL's residence on Staten Island, New York.

-2-

*Provision of Satellite Television Services and Facilities*
*to Al Manar (COUNTS ONE THROUGH SIX)*

(Conspiracy To Provide Material Support Or
Resources To A Foreign Terrorist Organization — Hizballah)

6.   From at least in or about September 2005, up to and including in or about August 2006, in the Southern District of New York and elsewhere, JAVED IQBAL, a/k/a "John Iqbal," the defendant, a lawful permanent resident alien of the United States, and SALEH ELAHWAL, the defendant, a United States citizen, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to provide "material support or resources," as that term is defined in 18 U.S.C. § 2339A(b), namely, property, tangible and intangible, and service, including expert advice or assistance and facilities, to a Foreign Terrorist Organization, to wit, Hizballah, which was designated by the Secretary of State as a Foreign Terrorist Organization, pursuant to Section 219 of the Immigration and Nationality Act and has remained so designated through and including the present time.

7.   It was a part and an object of the conspiracy that JAVED IQBAL, a/k/a "John Iqbal," and SALEH ELAHWAL, the defendants, and others known and unknown, agreed to provide satellite television services to Hizballah's television station, Al Manar, in exchange for payments of thousands of dollars to HDTV, knowing that Hizballah is a designated terrorist organization (as defined in 18

-3-

U.S.C. section 2339B(g)(6)), that Hizballah had engaged and was engaging in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that Hizballah had engaged and was engaging in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339B.

(Title 18, United States Code, Section 2339B.)

<u>COUNT TWO</u>

(Providing Material Support Or Resources
To A Foreign Terrorist Organization — Hizballah)

The Grand Jury further charges:

8.    Paragraphs One through Five of this Indictment are realleged, repeated, and incorporated by reference as if fully set forth herein.

9.    From at least in or about September 2005, up to and including in or about August 2006, in the Southern District of New York and elsewhere, JAVED IQBAL, a/k/a "John Iqbal," the defendant, a lawful permanent resident alien of the United States, and SALEH ELAHWAL, the defendant, a United States citizen, and others known and unknown, unlawfully and knowingly did provide "material support or resources," as that term is defined in 18 U.S.C. § 2339A(b), namely, property, tangible and intangible, and service, including expert advice or assistance and facilities, to a Foreign Terrorist Organization, to wit, Hizballah, which was designated by the

-4-

Secretary of State as a Foreign Terrorist Organization, pursuant to Section 219 of the Immigration and Nationality Act, and has remained so designated through and including the present time, and knowing that Hizballah is a designated terrorist organization (as defined in 18 U.S.C. section 2339B(g)(6)), that Hizballah had engaged and was engaging in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that Hizballah had engaged and was engaging in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339B, to wit, IQBAL and ELAHWAL provided satellite television services to Hizballah's television station, Al Manar, in exchange for payments of thousands of dollars to HDTV.

(Title 18, United States Code, Sections 2339B & 2.)

COUNT THREE

(Conspiracy to Violate the United Nations
Participation Act of 1945 — Hizballah)

The Grand Jury further charges:

10.   Paragraphs One through Five of this Indictment are realleged, repeated, and incorporated by reference as if fully set forth herein.

11.   From at least in or about September 2005, up to and including in or about August 2006, in the Southern District of New York and elsewhere, JAVED IQBAL, a/k/a "John Iqbal," and SALEH ELAHWAL, the defendants, and others known and unknown, unlawfully,

willfully, and knowingly did combine, conspire, confederate and agree together and with each other to violate the laws of the United States, to wit, Title 22, United States Code, Section 287c.

12.   It was a part and an object of the conspiracy that JAVED IQBAL, a/k/a "John Iqbal," the defendant, a lawful permanent resident alien of the United States, and SALEH ELAHWAL, the defendant, a United States citizen, agreed to violate a regulation issued under Section 5 of the United Nations Participation Act of 1945, in that IQBAL and ELAHWAL would and did engage in prohibited transactions and dealings with Hizballah by providing satellite television services to Hizballah's television station, Al Manar, in exchange for payments of thousands of dollars to HDTV, in violation of Title 22, United States Code, Section 287c.

<u>Overt Acts</u>

13.   In furtherance of this conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about September 14, 2005, ELAHWAL sent an e-mail to a representative of Al Manar offering HDTV's services in broadcasting Al Manar in, among other places, North and South America.

b.   On or about November 13, 2005, ELAHWAL signed a contract in Beirut, Lebanon, in which HDTV agreed to provide

satellite broadcasting services to Al Manar in exchange for thousands of dollars per month.

   c. On or about December 9, 2005, a representative of Al Manar in Beirut, Lebanon, sent approximately $27,975 to HDTV's bank account via wire transfer through a bank in Manhattan.

   d. On or about December 16, 2005, a representative of Al Manar in Beirut, Lebanon, sent an e-mail to IQBAL and ELAHWAL requesting a quote for the sale of thirty-five satellite receivers.

   e. On or about January 4, 2006, a representative of Al Manar in Beirut, Lebanon, sent approximately $27,972 to HDTV's bank account via wire transfer through a bank in Manhattan.

   f. On or about February 8, 2006, a representative of Al Manar in Beirut, Lebanon, sent approximately $27,973 to HDTV's bank account via wire transfer through a bank in Manhattan.

   g. On or about March 15, 2006, a representative of Al Manar in Beirut, Lebanon, sent approximately $27,973 to HDTV's bank account via wire transfer through a bank in Manhattan.

   h. On or about March 23, 2006, a representative of Al Manar in Beirut, Lebanon, sent an e-mail to IQBAL and ELAHWAL requesting confirmation that HDTV would begin broadcasting Al Manar via the Internet.

   i. On or about April 10, 2006, IQBAL sent a facsimile transmission to a representative of a satellite company

in Virginia in which he falsely claimed that HDTV had broadcast Al Manar by mistake.

j.   On or about June 7, 2006, in a conversation with a confidential informant (the "CI") at HDTV's Brooklyn office, IQBAL offered to provide the CI with access to Al Manar television broadcasts.

k.   On or about June 22, 2006, IQBAL and ELAHWAL caused an e-mail to be sent to a representative of Al Manar in Beirut, Lebanon, discussing, among other things, HDTV's efforts to broadcast Al Manar through an intermediary in London, England.

l.   On or about July 14, 2006, IQBAL caused a contractor to install a satellite television system in an apartment in Manhattan for the purpose of, among other things, viewing Al Manar television broadcasts.

m.   On or about July 20, 2006, IQBAL sent an e-mail to a representative of a company in London, England, regarding that company's efforts to use the Internet to broadcast Al Manar to HDTV's customers.

(Title 18, United States Code, Section 371.)

COUNT FOUR

(Violation of the United Nations
Participation Act of 1945 — Hizballah)

The Grand Jury further charges:

14.   Paragraphs One through Five of this Indictment are realleged, repeated, and incorporated by reference as if fully set forth herein.

15.   From at least in or about September 2005, up to and including in or about August 2006, in the Southern District of New York and elsewhere, JAVED IQBAL, a/k/a "John Iqbal," the defendant, a lawful permanent resident alien of the United States, and SALEH ELAHWAL, the defendant, a United States citizen, unlawfully, willfully, and knowingly violated a regulation issued under Section 5 of the United Nations Participation Act of 1945, in that IQBAL and ELAHWAL engaged in prohibited transactions and dealings with Hizballah by providing satellite television services to Hizballah's television station, Al Manar, in exchange for payments of thousands of dollars to HDTV.

(Title 22, United States Code, Section 287c;
Title 18, United States Code, Section 2;
Executive Order 13224; 31 C.F.R. Part 594)

COUNT FIVE

(Conspiracy to Violate the United Nations
Participation Act of 1945 — Al Manar)

The Grand Jury further charges:

16.    Paragraphs One through Five of this Indictment are realleged, repeated, and incorporated by reference as if fully set forth herein.

17.    From at least on or about March 23, 2006, up to and including in or about August 2006, in the Southern District of New York and elsewhere, JAVED IQBAL, a/k/a "John Iqbal," and SALEH ELAHWAL, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to violate the laws of the United States, to wit, Title 22, United States Code, Section 287c.

18.    It was a part and an object of the conspiracy that JAVED IQBAL, a/k/a "John Iqbal," the defendant, a lawful permanent resident alien of the United States, and SALEH ELAHWAL, the defendant, a United States citizen, agreed to violate a regulation issued under Section 5 of the United Nations Participation Act of 1945, in that IQBAL and ELAHWAL would and did engage in prohibited transactions and dealings with Al Manar by providing satellite television services to Al Manar in exchange for payments of thousands of dollars to HDTV, in violation of Title 22, United States Code, Section 287c.

-10-

Overt Acts

19.    In furtherance of this conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On or about April 10, 2006, IQBAL sent a facsimile transmission to a representative of a satellite company in Virginia in which he claimed that HDTV had broadcast Al Manar by mistake.

b.    On or about June 7, 2006, in a conversation with a confidential informant (the "CI") at HDTV's Brooklyn office, IQBAL offered to provide the CI with access to Al Manar television broadcasts.

c.    On or about June 22, 2006, IQBAL and ELAHWAL caused a letter to be sent to a representative of Al Manar in Beirut, Lebanon, discussing, among other things, HDTV's efforts to broadcast Al Manar through an intermediary in London, England.

d.    On or about July 14, 2006, IQBAL caused a contractor to install a satellite television system in an apartment in Manhattan for the purpose of, among other things, viewing Al-Manar.

e.    On or about July 20, 2006, IQBAL sent an e-mail to a representative of a company in London, England, regarding that company's efforts to use the Internet to broadcast Al Manar to HDTV's customers.

(Title 18, United States Code, Section 371.)

<u>COUNT SIX</u>

(Violation of the United Nations
Participation Act of 1945 — Al Manar)

The Grand Jury further charges:

20.   Paragraphs One through Five of this Indictment are realleged, repeated, and incorporated by reference as if fully set forth herein.

21.   From at least on or about March 23, 2006, up to and including in or about August 2006, in the Southern District of New York and elsewhere, JAVED IQBAL, a/k/a "John Iqbal," the defendant, a lawful permanent resident alien of the United States, and SALEH ELAHWAL, the defendant, a United States citizen, unlawfully, willfully, and knowingly violated a regulation issued under Section 5 of the United Nations Participation Act of 1945, in that IQBAL and ELAHWAL engaged in prohibited transactions and dealings with Al Manar by providing satellite television services to Al Manar in exchange for payments of thousands of dollars to HDTV.

(Title 22, United States Code, Section 287c;
Title 18, United States Code, Section 2;
Executive Order 13224; 31 C.F.R. Part 594)

-12-

*Provision of Equipment to Al Manar (COUNTS SEVEN THROUGH ELEVEN)*

COUNT SEVEN

(Conspiracy To Provide Material Support Or
Resources To A Foreign Terrorist Organization — Hizballah)

The Grand Jury further charges:

22.   Paragraphs One through Five of this Indictment are realleged, repeated, and incorporated by reference as if fully set forth herein.

23.   From at least in or about September 2005, up to and including in or about August 2006, in the Southern District of New York and elsewhere, JAVED IQBAL, a/k/a "John Iqbal," the defendant, a lawful permanent resident alien of the United States, and SALEH ELAHWAL, the defendant, a United States citizen, and others known and unknown, unlawfully and knowingly did combine, conspire, confederate, and agree together and with each other to provide "material support or resources," as that term is defined in 18 U.S.C. § 2339A(b), namely, property, tangible and intangible, and service, including communications equipment, to a Foreign Terrorist Organization, to wit, Hizballah, which was designated by the Secretary of State as a Foreign Terrorist Organization, pursuant to Section 219 of the Immigration and Nationality Act and has remained so designated through and including the present time.

24.   It was a part and an object of the conspiracy that JAVED IQBAL, a/k/a "John Iqbal," and SALEH ELAHWAL, the defendants,

and others known and unknown, agreed to provide equipment relating
to satellite television broadcasting to Hizballah's television
station, Al Manar, in exchange for payments of thousands of dollars
to HDTV, knowing that Hizballah is a designated terrorist
organization (as defined in 18 U.S.C. section 2339B(g)(6)), that
Hizballah had engaged and was engaging in terrorist activity (as
defined in section 212(a)(3)(B) of the Immigration and Nationality
Act), and that Hizballah had engaged and was engaging in terrorism
(as defined in section 140(d)(2) of the Foreign Relations
Authorization Act, Fiscal Years 1988 and 1989), in violation of
Title 18, United States Code, Section 2339B.

(Title 18, United States Code, Section 2339B.)

### COUNT EIGHT

(Providing Material Support Or Resources
To A Foreign Terrorist Organization — Hizballah)

The Grand Jury further charges:

25.  Paragraphs One through Five of this Indictment are
realleged, repeated, and incorporated by reference as if fully set
forth herein.

26.  From at least in or about September 2005, up to and
including in or about August 2006, in the Southern District of New
York and elsewhere, JAVED IQBAL, a/k/a "John Iqbal," the defendant,
a lawful permanent resident alien of the United States, and SALEH
ELAHWAL, the defendant, a United States citizen, and others known
and unknown, unlawfully and knowingly did provide "material support

-14-

or resources," as that term is defined in 18 U.S.C. § 2339A(b), namely, property, tangible and intangible, and service, including communications equipment, to a Foreign Terrorist Organization, to wit, Hizballah, which was designated by the Secretary of State as a Foreign Terrorist Organization, pursuant to Section 219 of the Immigration and Nationality Act, and has remained so designated through and including the present time, and knowing that Hizballah is a designated terrorist organization (as defined in 18 U.S.C. section 2339B(g)(6)), that Hizballah had engaged and was engaging in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), and that Hizballah had engaged and was engaging in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339B, to wit, IQBAL and ELAHWAL provided equipment relating to satellite television broadcasting to Hizballah's television station, Al Manar, in exchange for payments of thousands of dollars to HDTV.

(Title 18, United States Code, Sections 2339B and 2.)

COUNT NINE

(Conspiracy to Violate the United Nations
Participation Act of 1945 — Hizballah)

The Grand Jury further charges:

27.   Paragraphs One through Five of this Indictment are realleged, repeated, and incorporated by reference as if fully set forth herein.

28.   From at least in or about September 2005, up to and including in or about August 2006, in the Southern District of New York and elsewhere, JAVED IQBAL, a/k/a "John Iqbal," and SALEH ELAHWAL, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to violate the laws of the United States, to wit, Title 22, United States Code, Section 287c.

29.   It was a part and an object of the conspiracy that JAVED IQBAL, a/k/a "John Iqbal," the defendant, a lawful permanent resident alien of the United States, and SALEH ELAHWAL, the defendant, a United States citizen, agreed to violate a regulation issued under Section 5 of the United Nations Participation Act of 1945, in that IQBAL and ELAHWAL would and did provide electronic equipment relating to satellite television broadcasting to Hizballah's television station, Al Manar, in exchange for payments of thousands of dollars to HDTV, in violation of Title 22, United States Code, Section 287c.

Overt Acts

30.   In furtherance of this conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about November 11, 2005, IQBAL sent an e-mail to a representative of Al Manar to discuss equipment that HDTV would soon send to Al Manar.

b.   On or about November 18, 2005, IQBAL and ELAHWAL caused satellite receivers to be shipped to "Almanar TV" in Beirut, Lebanon.

c.   On or about December 6, 2005, ELAHWAL sent an e-mail to a representative of Al Manar to discuss equipment that HDTV had provided to Al Manar.

d.   On or about December 16, 2005, a representative of Al Manar in Beirut, Lebanon, sent an e-mail to IQBAL and ELAHWAL requesting a quote for the sale of thirty-five satellite receivers.

e.   On or about January 26, 2006, IQBAL received a facsimile transmission at his Staten Island home from a representative of a shipping company located in Jamaica, New York.

f.   On or about March 22, 2006, IQBAL and ELAHWAL caused a "sample power supply part" to be shipped to "Almanar TV" in Beirut, Lebanon.

-17-

g.    On or about March 25, 2006, a representative of Al Manar sent an e-mail to both IQBAL and ELAHWAL stating that the "power supply module" had cleared Customs.

h.    On or about June 22, 2006, IQBAL and ELAHWAL caused a letter to be sent to a representative of Al Manar in Beirut, Lebanon, discussing, among other things, HDTV's purchase of satellite equipment on behalf of Al Manar.

(Title 18, United States Code, Section 371.)

COUNT TEN

(Violation of the United Nations
Participation Act of 1945 — Hizballah)

The Grand Jury further charges:

31.    Paragraphs One through Five of this Indictment are realleged, repeated, and incorporated by reference as if fully set forth herein.

32.    From at least in or about September 2005, up to and including in or about August 2006, in the Southern District of New York and elsewhere, JAVED IQBAL, a/k/a "John Iqbal," the defendant, a lawful permanent resident alien of the United States, and SALEH ELAHWAL, the defendant, a United States citizen, unlawfully, willfully, and knowingly violated a regulation issued under Section 5 of the United Nations Participation Act of 1945, in that IQBAL and ELAHWAL engaged in prohibited transactions and dealings with Hizballah's television station, Al Manar, by providing electronic

-18-

equipment relating to satellite television broadcasting to Al Manar in exchange for payments of thousands of dollars to HDTV.

(Title 22, United States Code, Section 287c;
Title 18, United States Code, Section 2;
Executive Order 13224; 31 C.F.R. Part 594)

### COUNT ELEVEN

(Conspiracy to Violate the United Nations
Participation Act of 1945 — Al Manar)

The Grand Jury further charges:

33.  Paragraphs One through Five of this Indictment are realleged, repeated, and incorporated by reference as if fully set forth herein.

34.  From at least on or about March 23, 2006, up to and including in or about August 2006, in the Southern District of New York and elsewhere, JAVED IQBAL, a/k/a "John Iqbal," and SALEH ELAHWAL, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to violate the laws of the United States, to wit, Title 22, United States Code, Section 287c.

35.  It was a part and an object of the conspiracy that JAVED IQBAL, a/k/a "John Iqbal," the defendant, a lawful permanent resident alien of the United States, and SALEH ELAHWAL, the defendant, a United States citizen, agreed to violate a regulation issued under Section 5 of the United Nations Participation Act of 1945, in that IQBAL and ELAHWAL would and did provide electronic equipment relating to satellite television broadcasting to Al Manar

in exchange for payments of thousands of dollars to HDTV, in violation of Title 22, United States Code, Section 287c.

<u>Overt Acts</u>

36.   In furtherance of this conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about March 25, 2006, a representative of Al Manar sent an e-mail to both IQBAL and ELAHWAL stating that the "power supply module" had cleared Customs.

b.   On or about June 22, 2006, IQBAL and ELAHWAL caused a letter to be sent to a representative of Al Manar in Beirut, Lebanon, discussing, among other things, HDTV's purchase of satellite equipment on behalf of Al Manar.

(Title 18, United States Code, Section 371.)

_____          _____
FOREPERSON                        MICHAEL J. GARCIA
                                  United States Attorney

-20-

Form No. USA-33s-274 (Ed. 9-25-58)

=========================================

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

=========================================

### UNITED STATES OF AMERICA

- v. -

### JAVED IQBAL,
### a/k/a "John Iqbal," and
### SALEH ELAHWAL,

Defendants.

### INDICTMENT

S1 06 Cr. 1054 (RMB)

(18 U.S.C. §§ 371, 2339B, & 2;
22 U.S.C. § 287c; Executive Order 13224;
31 C.F.R. Part 594)

_____
                    MICHAEL J. GARCIA
                    United States Attorney.

A TRUE BILL

_____
                    *Azzenaire Clifford*
                    Foreperson.

=========================================

6/20/07 - Filed Superseding Indictment.
                    Eaton, J. U.S.M.J.